# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Virginia M. Kendall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 13 C 2142 | **DATE** | 3/25/2013 |
| **CASE TITLE** | ROMAN WROCLAWSKI vs. WARDEN MCC, CHICAGO | | |

**DOCKET ENTRY TEXT**

Based on the totality of the record before the Court and the reasoning set forth, Petitioner's request for issuance of a writ of habeas corpus is denied. Civil Case Terminated.

■[ For further details see text below.]     Docketing to mail notices.

*Mail AO 450 form.

01:00

**STATEMENT**

Petitioner Roman Wroclawski ("Petitioner") moves this Court pursuant to 28 U.S.C. 2241 for a writ of habeas corpus ordering his immediate release from the custody of the United States Marshals. Specifically, Petitioner seeks immediate release pursuant to 18 U.S.C. 3188 because the United States has failed to complete his extradition within the statutory period of two calendar months following his confinement. Petitioner's petition for immediate release is denied.

Facts

On December 17, 2012, United States Magistrate Judge Michelle H. Burns in *In re Extradition of Wroclawski*, Mag. No. 07-302-M (MHB) (D. Ariz.) issued a Warrant for Commitment of Petitioner and directed that Wroclawski self-surrender to federal custody on January 16, 2013. Wroclawski timely self-surrendered on January 16, 2013, and was transported from Arizona to the Metropolitan Correctional Center in Chicago due to the number of direct flights between Chicago and Poland.

On March 14, 2013, the Secretary of State issued a surrender warrant Petitioner. On March 16, 2013, the two calendar months delineated for post-warrant confinement under Section 3188 expired. On March 19, 2013, the Secretary of State informed counsel for Petitioner that it was negotiating dates for Polish authorities

**STATEMENT**

to collect Petitioner. As of the date of this ruling, the Polish authorities are confirmed to come to Chicago to collect Petitioner and return him to Poland on March 28, 2013 – three days hence. In fact, the Court was informed that the Polish authorities will be arriving at O'Hare within the hour.

Analysis

The parties do not dispute that the merits of Petitioner's extradition are not before this Court. Petitioner has already exhausted his remedies on the merits of the extradition through a habeas petition to quash the extradition order, which has been denied by the Ninth Circuit and it is undisputed that Petitioner has exhausted his appeals. Thus, the matter before this Court turns entirely on the appropriate interpretation of 18 U.S.C. 3188. The statute states, in relevant part, that whenever a person is committed for extradition and "is not so delivered up and conveyed out of the United States within two calendar months after such commitment" then, upon petition by the person, a court "may order the person so committed to be discharged out of custody, unless sufficient cause is shown to such judge why such discharge ought not to be ordered." 18 U.S.C. 3188.

Section 3188 leaves the Court with discretion to order, or decline to order, discharge of the person filing the petition. *See Barrett v. United States*, 590 F.2d 624, 626 (6th Cir. 1978) ( "[t]he enforcement language applicable to the two-month limitations is not . . . of a mandatory nature"); *In re United States*, 713 F.2d 105, 108 (5th Cir. 1983) (holding that section 3188 "clearly contemplates an exercise of discretion by the courts").

In this particular case, the United States has demonstrated "good cause" for discharge to be denied. First, the period of confinement of Petitioner is not "indefinite" because the Polish authorities are confirmed to be coming to collect Petitioner and return him to Poland no later than March 28, 2013. Therefore, this case is distinguishable from the Seventh Circuit precedent cited by Petitioner, *In re Factor's Extradition*, 75 F.2d 10 (7th Cir. 1934). In *Factor's*, United States planned to hold the petitioner in custody indefinitely in order to use him as a witness in other prosecutions prior to completing his extradition to Britain, *id.* at 11, a concern also expressed by the United States Supreme Court as the basis for the sixty-day period in 3188. *See Jimenez v. United States District Court for the Southern District of Florida,* 84 S.Ct. 14 (1963) (Section 3188's "purpose was to ensure prompt action by the extraditing government as well as by this government so that the accused would not suffer incarceration in this country or uncertainty as to his status for long periods of time through no fault of his own.") Here, by contrast, there is a definite date for Petitioner's transfer to Poland, that date is at most three days from the date of this opinion, and is at most two weeks from the date the United States issued the surrender warrant.

Second, the United States has shown that the delay in the issuance of the surrender warrant was due to review by the Secretary of State of the merits of Petitioner's objections to extradition and therefore merits a finding of good cause. The Seventh Circuit has approved of extradition after the expiration of the statute of limitations on the underlying crime in cases in which the fugitive's own petitions for review caused the delay. *See In re Assarsson,* 670 F.2d 722, 725–26 (7th Cir. 1982). Specific to Section 3811, the United States Supreme Court has already held that the 60-day period in 3188 runs from the date of final adjudication of a

judicial petition for review of an extradition order, not the date of the order's original issue. *See Jimenez*, 64 S.Ct. at 18. A district court in Florida in *McElvy v. Civiletti*, 523 F. Supp. 42 (D.C. Fla. 1981) discussed the purpose of Section 3188's 60-day clock following *Jimenez*, stating: "Where the delay in effecting extradition is caused by the requesting nation, a petitioner ought not wallow in jail. He is entitled to immediate release at the conclusion of the two-calendar-month period. Conversely, where the delay is caused by consideration of the petitioner's claims by the courts of this, the asylum, country, he is not entitled to release at the conclusion of the two-calendar-month period from the entry of the certificate of extraditability but two months after the final adjudication of his claims."

Like the case before the court in *McElvy*, and in conformity with the reasoning in *In re Assarsson,* the United States has here shown good cause not to release Petitioner notwithstanding the running of the 60-day clock because the delay in the issuance of the surrender warrant come as a result of the Secretary of State's review of the merits of Petitioner's requests for reconsideration during the 60-day period, as shown by the numerous communications between Petitioner and the agency. The Court need not decide whether these requests *toll* the 60-day period per se, as judicial review of an extradition period does under *Jimenez*. Rather, the fact of Petitioner's requests for review to the Secretary of State, and the Secretary's consideration of those requests and the resultant delay in the issuance of the surrender warrant (and thus delay of the appearance of the Polish authorities for collection of Petitioner) are all factors to be considered when determining whether "good cause" exists to deny release under 18 U.S.C. 3188. *See Barrett*, 590 F.2d at 626 (citing a delay in the issuance of the warrant for surrender due to transcript delays under a finding of good cause). This Court finds that they do. To find in the alternative would be to set a problematic precedent for the executive branch akin to that discussed in *Jimenez* with respect to judicial review of an extradition order, namely, that the Secretary ought concern itself with the 60-day period to such an extent that it should, at some point in the 60-day period, stop investigation of potentially meritorious requests for review of an order of extradition in order to ensure that the person is extradited within the statutorily prescribed 60 days.

Finally, the practical implications from the imminent collection of Petitioner add weight to this Court's finding of "good cause" not to release the Petitioner. Petitioner has conceded that, were this Court to order Petitioner's immediate release, there is no reason that the United States could not immediately re-issue a Warrant for Commitment for Petitioner, at which point Petitioner would be placed back in federal custody and the 60-day period commenced again. Since this is not a case in which the Polish authorities have been delinquent in coming to collect Petitioner, and since it is a matter of days after this ruling that they will arrive in Chicago to transport Petitioner back to Poland, continued confinement for so short a period does not prejudice the Petitioner. *Accord Barrett*, 590 F.2d at 626. Indeed, commencing the entire confinement and surrender process a second time would almost certainly result in longer confinement for the Petitioner than the possible 3-day period he now faces. The lack of prejudice to Petitioner also merits a finding that the United States has demonstrated good cause to decline to order discharge of Petitioner.

Based on the totality of the record before the Court and the reasoning set forth above, Petitioner's request for issuance of a writ of habeas corpus is denied.